**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **ROBERT MULLIGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.  1:17-CV-1366** |
| | ) | |
| **3SI SECURITY SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  NATURE OF THE CASE**

1.      This is an employment discrimination action brought by Plaintiff, Robert Mulligan ("Mulligan" and/or "Plaintiff"), against Defendant, 3SI Security Systems, Inc. ("Defendant" or "3SI"), for unlawfully discriminating against him on the basis of his disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, as amended.

**II.  PARTIES**

2.      Mulligan is a citizen of the United States.  At all time relevant to this lawsuit Mulligan has resided in the State of Illinois.

3.      3SI is Texas corporation, and, at all times relevant to this action, has maintained facilities and conducted business within the geographic boundaries of the Southern District of Indiana.

**III. JURISDICTION AND VENUE**

4.      This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §12117.

5.      Defendant is an "employer" as defined by the ADA, 42 U.S.C. § 12111(5)(A), as

amended.

6.      Mulligan is an "employee" as defined by the ADA, 42 U.S.C. § 12111(4).

7.      Mulligan satisfied his obligation to exhaust administrative remedies, having timely filed EEOC Charge No. 470-2016-02625, alleging disability discrimination, receiving the appropriate Notice of Right to Sue on February 10, 2017, and timely filing this action less than ninety days following his receipt of said notice.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(3).

### IV. FACTUAL ALLEGATIONS

9.      Mulligan began his employment with 3SI's predecessor, ICI Security Systems, in May 1988.  At all times relevant to this charge, Mulligan has met or exceeded 3SI's legitimate job performance expectations.

10.     During the latter half of 2015, Mulligan began to experience a number of severe dental problems.  As a direct result of these dental problems, Mulligan developed a severe infection.

11.     At a 3SI business meeting in Frasier, Pennsylvania, on February 21 through 24, 2016, Mulligan became extremely fatigued due to his infection, and "nodded off" during the meeting.

12.     On February 25, 2016, Mulligan received a call from his manager and the 3SI Human Resources office.  During the call, Mulligan was told that it had appeared he was "not attentive" during the business meeting, and was asked if "anything was wrong," to which Mulligan responded that he was having dental problems.

13.     Mulligan was told that he should get "checked out," and that he was not allowed to drive his company vehicle until he was cleared by a doctor.

14.     Mulligan began treatment of his dental problems.  Nonetheless, 3SI required Mulligan's primary physician to complete and return a lengthy questionnaire concerning Mulligan's

health.  The questionnaire disclosed that Mulligan was physically and mentally competent to drive an automobile, and that he was fully cleared for work.

15.    On May 18, 2016, Mulligan experienced pain in his side.  He was taken to Indiana University Health West, where he was diagnosed with gall bladder issues, and where his gall bladder was removed.  Mulligan was an in-patient at the hospital for two and a half days, and was then required to recuperate at home through May 31.

16.    Mulligan's physician provided him with a letter on his return to work, certifying that Mulligan had been under the physician's care from May 18 through June 1, and had completely incapacitated during that time.  The letter also certified that Mulligan could return to work on June 1, and would be able to resume full duties on June 27, 2016.

17.    Despite the doctor's letter, on June 2, 2016, 3SI sent Mulligan a letter demanding "documentation from your physician confirming your absences, [and the] date you returned to work."

18.    On June 14, 2016, Mulligan was placed on a Performance Improvement Program ("PIP").  The PIP took the State of Ohio out of Mulligan's sales territory, leaving Mulligan with only Indiana and Michigan.  (Mulligan's territory had also previously included the State of Kentucky, which had been taken away a short time before and assigned to a 28-year-old sales representative).

19.    Mulligan had never before been placed on a PIP.

20.    According to 3SI, the reasons for Mulligan's PIP were:  "Insubordination of Corporate Expenses," "customer negligence and complaints of unacceptable responses," and non response to business matters."

21.    Significantly, Mulligan's sales performance had heretofore been highly successful, and Mulligan had received several commendations for his sales.  Mulligan admittedly was behind on submitting his expense reports, but that had been true for a significant period before the PIP, and

no one had previously threatened Mulligan with disciplinary action on that basis. More importantly, none of the provisions of the PIP addressed the issue of Mulligan's expense accounts. The PIP merely addressed the number of sales calls Mulligan was to make, and *limited* the time he was allowed to do administrative work, such as filing his expense reports.

22.     Fifth Third Bank, headquartered in Ohio, and one of Mulligan's best customers, when advised that Mulligan would no longer be their 3SI sales representative, specifically told 3SI that Mulligan was not to be taken off of their account. As a result, on June 22, Mulligan's PIP was changed to put Ohio bank into his sales territory, although a number of individual banks were assigned to other sales representatives.

23.     On or about August 15, 2016, Mulligan filed EEOC Charge No. 470-2016-02625, alleging that he had been subjected to discrimination on the basis of a disability, in violation of the Americans With Disabilities Act ("ADA").

24.     One of the actions Mulligan cited was 3SI's decision to place him on a 90-day Performance Improvement Plan ("PIP"), beginning on June 22, 2016.

25.     After Mulligan filed his charge, on or about September 26, 2016, Mulligan was told his PIP was being extended by an additional 45 days.

26.     On November 9, 2016, the 45th day of the PIP, 3SI terminated Mulligan's employment.

## V.  LEGAL ALLEGATIONS

### Count 1: Disability Discrimination in Violation of the ADA

27.     Mulligan incorporates paragraphs one (1) through twenty-six (26) of his Complaint by reference.

28.     Mulligan's dental problems and gall bladder problems constituted disabilities, as that

term is defined by the ADA, making him disabled, and/or perceived by 3SI as disabled.

29.     By prohibiting Mulligan from driving his company car, placing Mulligan on a PIP, and ultimately, by terminating Mulligan's employment, 3SI discriminated against Mulligan in violation of the ADA because of his disability by subjecting him to terms and conditions of employment that are less favorable than those to which employees who are not disabled, or who are not perceived as disabled, are subjected.

30.     3SI's actions subjected Mulligan to a hostile work environment based on his disability, in further violation of the ADA.

31.     3SI's unlawful and discriminatory actions were intentional, willful, and/or taken in reckless disregard for Mulligan's rights, and 3SI therefore acted in bad faith.

32.     Mulligan suffered, and continues to suffer, damages as a result of 3SI's unlawful and discriminatory actions, including but not limited to loss of employment, income and benefits, embarrassment, humiliation, damage to his personal and professional reputation, and emotional distress.

## VI.  RELIEF

**WHEREFORE,** Mulligan respectfully prays that the Court find in his favor and provide the following relief:

33.     That 3SI be ordered resinstate Mulligan to the position he would have held in the absence of 3SI's unlawful discrimination, or to pay Mulligan front-pay in lieu thereof;

34.     That 3SI be ordered to pay Mulligan the wages and benefits he would have had, absent 3SI's unlawful discrimination;

35.     That 3SI be ordered to pay to Mulligan appropriate compensatory and punitive damages for its bad faith violations of the ADA;

36.     That 3SI be ordered to pay prejudgment and postjudgment interest on all sums recoverable;

37.     That 3SI be ordered to pay Mulligan's reasonable attorney fees and costs; and

38.     That 3SI be ordered to provide Mulligan with all other relief that is just and proper.

### VII.  DEMAND FOR TRIAL BY JURY

The Plaintiff, Randy Mulligan, by counsel, requests a trial by jury on all issues so triable.

Respectfully submitted,

  s/   Jay Meisenhelder   
Jay Meisenhelder, Atty No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite B20
Indianapolis, IN  46214
Office Telephone:     317/231-5193
Direct Telephone:     317/899-9220
Facsimile Number:     317/982-5463
Email Address:        jaym@ecrls.com